UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MADHAVE PRASAD DAHAL,

              Petitioner,

    v.

TODD BLANCHE, *et al.*,

              Respondents.

Case No. C26-1582-MLP

ORDER

Petitioner Madhave Prasad Dahal, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, has become indefinite. (Dkt. # 1.) He seeks release from custody and injunctive relief related to his future redetention and possible third-country removal. (*Id.*) Respondents filed a timely return in response (dkt. # 9), supported by a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Anthony Rosa (dkt. # 10) ("Rosa Decl."), and an unsworn declaration from their counsel, Lawrence Van Daley (dkt. # 11) ("Van Daley Decl."). Petitioner filed a traverse in reply. (Dkt. # 12)

ORDER - 1

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) and ORDERS that Petitioner be released from detention within twenty-four hours. Remaining requests for relief are addressed below.[1]

## I.   BACKGROUND

Petitioner is a native and citizen of Nepal, who first entered the United States on January 24, 2025. (Rosa Decl., ¶¶ 3, 4.) On February 2, 2025, Petitioner was transferred to the NWIPC, where he has since remained detained. (*Id.*, ¶ 5.) Petitioner was initially served with a Notice and Order of Expedited Removal but expressed a credible fear of returning to Nepal. (*Id.*, ¶¶ 4, 6.) He was thereafter placed into non-expedited removal proceedings. (*Id.*, ¶ 7; *see* Van Daley Decl., ¶ 2, Ex. 2.)

On October 29, 2025, an immigration judge denied Petitioner's application for asylum, denied withholding of removal, and ordered him removed to Nepal. (Rosa Decl., ¶ 8; *see* Van Daley Decl., ¶ 2, Ex. 4.) The removal order indicates both DHS and Petitioner waived their right to appeal. (*See* Van Daley Decl., ¶ 2, Ex. 4.)

Deportation Officer Rosa asserts that on November 3, 2025, ERO "began preparing removal documents and meeting with Petitioner in reference to preparing for his removal." (Rosa Decl., ¶ 10.) On November 25, 2025, a travel document request ("TDR") was completed and approved for mailing to the Nepalese Embassy. (*Id.*, ¶ 12.) Respondents mailed the TDR to the Nepalese Embassy on December 8, 2025. (*Id.*) The Embassy advised in response that, "the citizenship number submitted for Petitioner was incomplete and insufficient for verification." (*Id.*, ¶ 13.) The Embassy requested "submission of either a complete citizenship certificate number or passport number[,] along with a copy of the passport or citizenship certificate." (*Id.*)

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 5.)

ORDER - 2

According to Officer Rosa, Petitioner agreed to provide his Nepalese ID number, but as of April 22, 2026, had been unable to do so. (*Id.*, ¶ 15.) As of May 8, 2026, Petitioner "had not made any additional efforts." (*Id.*) Officer Rosa asserts that a Detention and Deportation Officer (DDO) thereafter "contacted the Nepalese attaché for assistance." (*Id.*, ¶ 16.) Officer Rosa states that "ERO believes that it will be able to obtain a travel document for Petitioner's removal [to Nepal] in the reasonably foreseeable future." (*Id.*, ¶ 9.) ICE does not intend to remove Petitioner to a third country. (*Id.*, ¶ 17.)

On May 8, 2026, Petitioner filed the instant petition, seeking release from immigration detention and injunctive relief related to any future redetention and third-country removal. (Dkt. # 1 at 26-27.)

## II.    LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

### A.    Petitioner's Detention has Become Indefinite

The parties agree that Petitioner's order of removal is final, and that his current detention is therefore governed under 8 U.S.C. § 1231(a)(6). (Dkt. ## 1 at 9, 22; 9 at 3-4.) The parties also agree that *Zadvydas v. Davis*, 533 U.S. 678 (2001) provides the appropriate framework to guide the Court in deciding whether a noncitizen's post-final-order detention has become effectively indefinite but disagree on whether it affords Petitioner relief here. (Dkt. ## 1 at 7-10, 9 at 5-8.)

ORDER - 3

The Court therefore applies the framework articulated in *Zadvydas*, which, for the following reasons, compels Petitioner's release.

In *Zadvydas*, the Supreme Court construed 8 U.S.C. § 1231(a)(6) to authorize postremoval-period detention only for the period reasonably necessary to effect removal. 533 U.S. at 689, 699. The Court adopted a presumption that detention up to six months after the removal order becomes final is reasonable when it is related to effectuating removal. *Id.* at 701. "After this six-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* If removal is not reasonably foreseeable, "continued detention is no longer authorized by statute." *Id.* at 699.

Respondents acknowledge that Petitioner has been detained since his removal order became final on October 29, 2025. (Rosa Decl., ¶¶ 4-5, 8.) At the time of this Order, Petitioner will have spent over seven months in postremoval detention. Petitioner's detention is therefore beyond the six-month period *Zadvydas* identifies as "presumptively reasonable." 533 U.S. at 701.

Petitioner asserts that there is also "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." (Dkt. # 1 at 22 (quoting *Zadvydas*, 533 U.S. at 701).) Petitioner emphasizes the current political instability in Nepal and argues that "this diplomatic vacuum and uncertain political situation have left many Nepali detainees . . . held in ICE detention for months because . . . ICE has [been unable] to secure necessary travel documents from Nepal." (Dkt. # 1 at 8 (citing *Sharad K.C. v. Bondi*, 2025 WL 3713844 (W.D. Wash. Dec. 23, 2025); *Bhandari v. Bondi*, 2026 WL 369403, at *4 (W.D. Wash.

Feb. 10, 2026)).) Petitioner further asserts that ICE has not provided any updates about the status of his travel documents. (*Id.* at 9.)

Respondents argue Petitioner's showing is insufficient. (Dkt. # 9 at 1.) To support that assertion, Respondents contend that they have "been actively and in good faith pursuing Petitioner's removal to Nepal since shortly after the removal order became final . . . [which] remain ongoing as of May 2026[.]" (*Id.*) Respondents also assert that Petitioner's noncooperation has added to the delay. (*Id.* at 3.) Specifically, Respondents contend that Petitioner "informed ERO that his family would email him a copy of his citizenship certificate" and that, "[d]espite follow-up inquiries by ERO on January 25, January 30, and February 18, 2026, no copy has been provided." (*Id.*) Further, despite his agreement to "obtain his Nepalese ID number from his bank[,]" by May 8, 2026, he had not done so. (*Id.*) Respondents argue this behavior "contributed materially to the current delay" which, under *Pelich v. INS*, 329 F.3d 1057 (9th Cir. 2003), prevents Petitioner from "manufactur[ing] a *Zadvydas* claim[.]" (*Id.* at 7.)

The Court initially observes that *Pelich* appears inapplicable to this case. In *Pelich*, the Court based its holding on a provision of the INA allowing the removal period to be tolled based on a noncitizen's noncooperation with removal:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Pelich*, 329 F.3d at 1059 (quoting 8 U.S.C. § 1231(a)(1)(C)).

Here, the parties agree that Petitioner is detained under § 1231(a)(6), and not the statute at issue in *Pelich*, § 1231(a)(1)(C). The court in *Pelich* specifically drew this very distinction. *See* 329 F.3d at 1059-60 ("Equally of note is the fact that the provision under which Pelich is

ORDER - 5

being detained, 8 U.S.C. § 1231(a)(1)(C) does not present the same constitutional concerns raised by 8 U.S.C. § 1231(a)(6), the provision at issue in *Zadvydas*.”). Respondents do not acknowledge this distinction or seek to expand *Pelich*’s application to the statute governing Petitioner’s detention. (*See* dkt. # 9 at 7.)

The alleged noncooperation here is also markedly different than that in *Pelich*. In that case, the noncitizen had “steadfastly refused to fill out a Polish passport application, which directly impede[d] Poland’s ability to determine whether [petitioner] qualifie[d] for Polish travel documents.” 329 F.3d at 1059. In addition, he provided “conflicting information regarding his name, his parents’ name, his parents’ birthplaces and residences, his birthplace, and his nationality.” (*Id.*)

Here, Respondents characterize Petitioner’s noncooperation as having “repeatedly promised to provide a passport or citizenship certificate but failed to follow through on multiple occasions over a period of months.” (Dkt. # 9 at 7.) Respondents assert that “[b]ecause Petitioner controls the production of the documents necessary to complete the travel document request, any delay in obtaining travel documents is attributable in significant part to his own inaction.” (*Id.*) As Petitioner points out, however, his cooperation was contingent on the behavior of others. (*See* dkt. # 12 at 6 (“Unfortunately, as he is detained thousands of miles from home, he was unable to coordinate the location and mailing of his passport or other citizenship documents.”).)

The Court is mindful of the challenges that NWIPC detainees can face when relying on the efforts of others, such as Petitioner’s family here, to locate and transmit documents on their behalf. Because Petitioner’s detention renders him physically incapable of gathering documents himself, his ability to “cooperate” with the government is contingent on the actions of others. Thus, contrary to Respondents’ position, while Petitioner may have had control or access to

ORDER - 6

citizenship documents while free, he effectively *lacked* control while detained. Thus, it is not clear to the Court that Petitioner's failure to satisfy his promise was a result of intentional noncooperation or a product of his circumstances. *See Akhmedkhodzhaev v. Hernandez*, 2026 WL 1396128, at *4 (W.D. Wash. May 19, 2026) (finding noncitizen who initially agreed to obtain and provide a Russian address from his family while detained at the NWIPC, but who was ultimately unable, did not have the "keys to his freedom in his pocket").

Therefore, the Court does not find *Pelich* persuasive or that § 1231(a)(1)(C) provides a basis to extend Petitioner's removal period or otherwise authorize the length of his current detention. The Court finds that Petitioner has shown good reason to believe that his removal is not reasonably likely in the foreseeable future. *Zadvydas*, 533 U.S. at 701.

The Court further finds that Respondents have not rebutted Petitioner's showing. While the Court agrees that Respondents have taken steps to enforce Petitioner's removal order, the current evidence before the Court does not demonstrate that his removal is reasonably likely to occur in the foreseeable future. Rather, the fact that Respondents "contacted the Nepalese attaché for assistance" after their first unsuccessful application suggests efforts have stalled. (*See* Rosa Decl., ¶ 16.) Respondents do not further explain what assistance they believe the attaché can provide or when they expect it to be provided.

Respondents further argue that "[w]here the government demonstrates ongoing, good-faith efforts to obtain travel documents and the only impediments are logistical or documentary in nature, habeas relief is routinely denied," but Respondents do not cite to any caselaw to support that assertion. (Dkt. # 9 at 7.) Respondents also point out that "the Nepalese Embassy has issued hundreds of travel documents to the United States for removal purposes in recent years," which, according to Respondents, "further confirms that removal to Nepal remains a

ORDER - 7

viable and regularly utilized pathway" (*Id.* at 8.) Respondents ultimately argue that "[e]ven if the Court were to conclude that Petitioner had made a prima facie showing under *Zadvydas*, the government has more than rebutted it with the detailed timeline of persistent efforts set forth above." (*Id.*)

The government's focus on the timeline of its past or ongoing efforts, without connecting it to Petitioner's future timeline of removal, is unhelpful at this stage in the *Zadvydas* analysis— which is focused on the likelihood and foreseeability of removal. *Zadvydas*, 533 U.S. at 702. "General indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Zhao v. Kelly*, No. C17-777, 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017); *see also Gilali v. Warden of McHenry Cnty. Jail*, No. C19-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (holding that although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and ERO continues to follow up on the documents' status, . . . this is insufficient. It is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future.")

Further, the fact that the Nepalese Embassy has issued hundreds of travel documents to the United States in recent years does not shed light on Petitioner's individual circumstances. *See Le v. Bondi*, 2026 WL 309239, at *4 (W.D. Wash. Feb. 5, 2026) ("[S]imply declaring that all pre-1995 immigrants are removable in the foreseeable future is not the sort of individualized assessment that might rebut the evidence presented by petitioner that his individual circumstances make removal unlikely."); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 726 (W.D. Wash. 2025) (internal quotations omitted) (requiring an individualized analysis). "Courts in this

ORDER - 8

circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen*, 796 F. Supp. 3d at 725 (citing cases).

On the current record, Petitioner has been detained for over six months and Respondents are awaiting assistance from the Nepalese attaché to assist with travel documents. Without additional information showing Petitioner's removal is reasonably likely in the foreseeable future, "ICE is not permitted to hold [Petitioner] indefinitely while it waits for travel documents[.]" *Tran v. Bondi*, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) (citing *Zadvydas*, 533 U.S. at 682). The Court will therefore grant Petitioner's habeas petition and order his immediate release.

**B.      Requests for Injunctive Relief**

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). A party must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008).

ORDER - 9

Petitioner "does not allege that his current detention was a result of an illegal re-detention." (*See* Dkt. # 1 at 10.) Nevertheless, Petitioner seeks two related orders governing any future redetention. First, Petitioner requests an order prohibiting the government from redetaining him without first "holding a hearing before a neutral decisionmaker at which Respondents bear the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances." (*Id.* at 26.) In addition, Petitioner seeks an order prohibiting the government from redetaining him without first: (1) obtaining a valid travel document to Nepal; (2) providing that document to him and his counsel; (3) offering him the opportunity to leave on his own within two months; and, (4) if he does not leave, permitting the government to redetain him provided they have already made concrete arrangements for him to be put on a flight to Nepal in the reasonably foreseeable future. (*Id.* at 27.)

Petitioner also seeks injunctive relief related to his potential removal to a third country, arguing that the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture ("CAT"), the Administrative Procedures Act ("APA") and "implementing regulations" require notice and an opportunity to respond before the government can pursue third-country removal. (Dkt. # 1 at 27.) Finally, Petitioner also seeks injunctive relief barring his removal to a third country to the extent that he is likely to face imprisonment or punishment upon his arrival. (*Id.*)

Petitioner's factual development for his requests for injunctive relief is limited, and his corresponding arguments are generalized. (*See* Dkt. # 1 at 23-26.) Petitioner does not meaningfully engage with the *eBay* factors or show a "cognizable danger of recurrent violation" for either his fear of redetention or his potential removal to a third country. *Cummings*, 316 F.3d at 897. Beyond summarily concluding that the requisite elements for injunctive relief are met

ORDER - 10

(*see* dkt. # 1 at 24-26), the limited factual record does not adequately show that Petitioner faces the risk of unlawful redetention in the future or removal to a third country.

Accordingly, the Court denies Petitioner's request for injunctive relief.

### IV.    CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

   a.    Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

   b.    Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2)    Petitioner's request for injunctive relief is DENIED without prejudice.

DATED this 12th day of June, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 11